**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**KENNETH BELL,**
**Plaintiff**

**v.** **Civil Action No. 3:04CV432-J**

**JO ANNE B. BARNHART, Commissioner Social Security Administration,**
**Defendant**

# MEMORANDUM OPINION

This case presents plaintiff Kenneth Bell's challenge to the decision of the Commissioner denying his claim to Disability Insurance Benefits. After examining the record as a whole, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be reversed.

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the

Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

Mr. Bell filed his application on March 27, 2001, alleging that he had been unable to engage in any substantial gainful work since January of 2001, when he suffered a 16-20 foot fall onto a concrete floor at work. After two separate hearings, the Administrative Law Judge ("ALJ") determined that Mr. Bell's status post repair of left hip fracture, status post injury to shoulder, knee and back, chronic pain, depression, and anxiety were severe impairments that prevented him from performing any of his past relevant work. However, the ALJ also determined that Mr. Bell retained the residual functional capacity to perform a significant range of light work that exists in the national economy.

If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

Mr. Bell contends that the decision cannot be seen as supported by substantial evidence because of legal error, arguing that the ALJ failed to consider the disabling effects of depression and chronic pain syndrome. Dr. Keisler, a consultant who examined the plaintiff on September 3, 2003, had as his primary focus an orthopedic physical exam, including range of motion, mobility, etc.; nonetheless, Dr. Keisler cautioned that it was impractical to try to separate the objective findings from the effects of depression and chronic pain syndrome. He explicitly observed as follows:

> This patient's signs and symptoms point primarily to significant depression and probable chronic pain syndrome. Such findings often overwhelm any objective problems or findings....It should be noted that individuals with depression or chronic pain syndrome have significant levels of discomfort and impairment at all times and periods, including rest. A psychiatric examination would be most appropriate.

Tr. 316-317.

In fact, psychiatric evaluation confirmed Dr. Keisler's concerns. Mr. Bell was evaluated by Dr. Embry, a psychiatrist, on January 10, 2003. Dr. Bell observed that during their conversation, "His concentration appeared to be slowed down and interrupted by his pain, he would also sometimes lose track of what he was thinking and then regain it." Tr. 297. Dr. Embry diagnosed major depression, post traumatic stress disorder, and chronic pain disorder. Tr. 299.

Dr. Embry assigned to Mr. Bell a Global Assessment of Functioning ("GAF") rating of 50, both current and highest in past year. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's GAF scale considers "psychological, social, and occupational functioning on a hypothetical continuumof mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate

for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." In addition, Dr. Embry counseled that efforts should be made to secure for Mr. Bell the financial means of paying for treatment for Mr. Bell's pain, since delay "will only most likely make his depression and PTSD worse." Tr. 299. The ALJ rejected Dr. Embry's opinion because it was a one time exam, because it was performed at the request of the attorney who was assisting Mr. Bell with his Workers Compensation application, and because Mr. Bell has not continued in psychotherapy. Tr. 23-24.

The record reflects that Mr. Bell regularly appeared for psychotherapy sessions and followed recommendations for supportive therapy to address his chronic pain problems. Tr. 266-277. The same record reflects that these sessions were possible because authorized by insurance. See, e.g., 271, 276. Mr. Bell and his wife explained the extent of their financial woes, which involved foreclosure and bankruptcy. Tr. 394. These financial problems plainly placed limitations on their ability to proceed with various medical care, including surgery and supportive therapies. There is nothing in this record to support the ALJ's conclusion that treatment has been foregone because of lack of interest or need.

At the hearings, Mr. Bell testified to classic symptoms of depression, including failure of concentration, feelings of worthlessness, thoughts of suicide, constriction of interests, etc. Tr. 355-356, 377-378, 393. Furthermore, there is no indication whatsoever that Mr. Bell has

voluntarily delayed in obtaining further back surgery; both Mr. Bell and his wife testified at length concerning the frustration of being unable to get his surgery scheduled due to provider demands of assurance of payment combined with "reverse turf wars" between Workers Compensation and her insurance carrier.

The Vocational Expert who testified at the second hearing was asked to assume the testimony was fully credible and supported by the objective evidence. Under that hypothetical, the VE did not hesitate to say he could not identify any jobs that Mr. Bell could do: "Primary reason appears to me to be the depression overlay at this point." Tr. 399.

Mr. Bell is concerned about the ALJ's treatment of the opinion of Dr. Peters, a pain management specialist who is Mr. Bell's treating physician. Dr. Peters reported that Mr. Bell did not respond to conservative management. Tr. 301. He performed epidural blocks with minimum short-term relief. Tr. 308. Dr. Peters recorded Mr. Bell's subjective reports of pain, but he also relied on MRI and discography to confirm the level of the pain. The discogram was able to reproduce his typical back pain. Tr. 304. Dr. Peters recommended intradiskal retrothermal coagulation procedure (IDET). Tr. 307. The procedure could not be scheduled because of financial considerations. Tr. 301. In November of 2002, Dr. Peters reiterated the criteria on which he relied in insisting that IDET was appropriate and necessary – low back pain of at least six months duration, eight weeks of conservative therapy without success, and diskography indicating abnormal anatomy and pain production at low pressure and volume. Tr. 264.

Dr. Whobrey, who treated Mr. Bell after his accident, examined him again two years later, and reported "no significant change with regard to his clinical status since ... September

2001." Tr. 290. She reported findings of muscle atrophy, ligament laxity, and muscle weakness, all consistent with Mr. Bell's reports of chronic pain. She also continued to record her impression that Mr. Bell suffered from depression and post-traumatic stress disorder. Tr. 180, 290.

Thus, Mr. Bell demonstrated through treating physicians' records, discography, and psychiatric examination the medical signs and laboratory findings which show that he has "medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. Sec. 404.1529(a). More than one medical source cautioned that the interaction between Mr. Bell's physical injuries and his depression/chronic pain syndrome deserved specific attention, thus underlining what Mr. Bell's testimony itself seemed to indicate: The whole is greater than the sum of the individual parts.

According to treating physicians' opinions the weight to which they are entitled, this Court is unable to discern substantial evidence to support the decision of the Commissioner. Mr. Bell's physical findings (including discography as well as muscle atrophy, weakness, etc.), the fact that he takes a powerful narcotic pain-reliever, the surgeon's strong recommendations for further interventions, and the psychiatrist's report all point to severe and debilitating pain. This is not a case in which there is sharp disagreement among medical sources. To the contrary, all of the medical evidence and all of the lay evidence is remarkably consistent. Under such circumstances, discounting one piece of evidence because of length of treatment, and another because of who paid for the examination, and another for yet another reason is simply failing to consider the record as a whole.

If the record is fully developed, all essential factual issues have been resolved, and the

record adequately establishes entitlement to benefits, remand for further proceedings serves no legitimate purpose. See, e.g., Abbott v. Sullivan, 905 F.2d 918 (6th Cir. 1990). We believe this is one of those rare cases in which "proof of disability is strong and evidence to the contrary is lacking." Faucher v. Secretary, 17 F.3d 171, 176 (6th Cir. 1994). The Court will remand this matter for calculation and award of benefits.

September 20, 2005

**Edward H. Johnstone, Senior Judge**
**United States District Court**